**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SOUDERTON AREA FOR ALL; PATRICK KITT; CHRISTOPHER SPIGEL; HELEN SPIGEL; MAUREEN KRATZ; AND HEATHER YOUNG,**<br><br>***Plaintiffs*,**<br><br>**v.**<br><br>**SOUDERTON AREA SCHOOL DISTRICT,**<br><br>***Defendant*.** | Case No. 2:24-cv-06202 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS


**INTRODUCTION** .......... **1**

**FACTUAL BACKGROUND** .......... **2**

**ARGUMENT** .......... **4**

**I. Banned Plaintiffs Are Likely to Succeed on the Merits of Their Claims.** .......... **5**

A. Banned Plaintiffs Are Likely to Succeed on the Merits of Their Claim that the District's Categorical Ban Violates their First Amendment Right to Free Expression. .......... 6

1. The Ban Deprives Banned Plaintiffs of their Free-Speech Right to Attend and Comment at School Board Meetings. .......... 6

2. The District Imposed the Property Ban in Retaliation for Banned Plaintiffs' Exercise of their Free-Speech Rights. .......... 8

a. Banned Plaintiffs engaged in constitutionally protected expression .......... 9

b. The property ban is having an actionable adverse impact .......... 12

c. The District imposed the property ban because of Banned Plaintiffs' statements .......... 13

B. Banned Plaintiffs Are Likely to Succeed on the Merits of Their Claim that the District Violated Their Due Process Rights by Failing to Provide a Meaningful Opportunity to Be Heard Before or After Imposing the Ban. .......... 15

**II. Banned Plaintiffs Will Suffer Irreparable Harm Without Preliminary Injunctive Relief** .......... **16**

**III. The District Will Suffer No Irreparable Harm If This Preliminary Injunctive Relief Issues.** .......... **18**

**IV. Granting Preliminary Injunctive Relief Will Serve the Public Interest.** .......... **18**

**CONCLUSION** .......... **19**

## TABLE OF AUTHORITIES

### CASES

*Abu-Jamal v. Price*,
154 F.3d 128 (3d Cir. 1998) .......... 17

*Amalgamated Transit Union Loc. 85 v. Port Auth.*,
39 F.4th 95 (3d Cir. 2022) .......... 19, 20

*Anderson v. Davila*,
125 F.3d 148 (3d Cir. 1997) .......... 9

*Barna v. Bd. of Sch. Dirs.*,
143 F. Supp. 3d 205 (M.D. Pa. 2015) .......... 6, 7

*Beattie v. Line Mountain Sch. Dist.*,
992 F. Supp. 2d 384 (M.D. Pa. 2014) .......... 18

*Boos v. Barry,*
485 U.S. 312 (1988) .......... 11

*Brown v. City of Jacksonville*,
No. 3:06-CV-122-J-20MMH, 2006 WL 385085 (M.D. Fla. Feb. 17, 2006) .......... 7, 8

*Buck v. Stankovic*,
485 F. Supp. 2d 576 (M.D. Pa. 2007) .......... 19

*Catron v. City of St. Petersburg*,
658 F.3d 1260 (11th Cir. 2011) .......... 16

*City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp. Rels. Comm'n*,
429 U.S. 167 (1976) .......... 5

*Cohen v. California,*
403 U.S. 15 (1971) .......... 11

*Council of Alt. Pol. Parties v. Hooks*,
121 F.3d 876 (3d Cir. 1997) .......... 17, 19

*Ctr. for Investigative Reporting v. Se. Pa. Transp. Auth.*,
975 F.3d 300 (3d Cir. 2020) .......... 19
*Cyr v. Addison Rutland Supervisory Union*,
60 F. Supp. 3d 536 (D. Vt. 2014) .......... 7, 8, 16, 17, 19, 20

*Eichenlaub v. Twp. Of Indiana*,
385 F.3d 274 (3d Cir. 2004)........................................................................................ 10

*Elliott v. Kiesewetter*,
98 F.3d 47 (3d Cir. 1996)........................................................................................... 20

*Elrod v. Burns*,
427 U.S. 347 (1976).................................................................................................... 17

*Erznoznik v. Jacksonville,*
422 U.S. 205 (1975).................................................................................................... 11

*Flynn v. Big Spring Sch. Dist.*,
No. 1:22-CV-00961, 2024 WL 4244832 (M.D. Pa. Sept. 19, 2024)...................................... 8, 13

*Frazier v. City of Philadelphia*,
441 F. Supp. 3d 76 (E.D. Pa. 2020) ............................................................................. 10

*Galena v. Leone*,
638 F.3d 186 (3d Cir. 2011)........................................................................................... 6

*Jerri v. Harran*,
No. 13-1328, 2016 WL 3453203 (E.D. Pa. June 23, 2016)................................................... 14

*Johnson v. Campbell*,
332 F.3d 199 (3d Cir. 2003)........................................................................................ 12

*Kennedy v. City Of Cincinnati*,
595 F.3d 327 (6th Cir. 2010) ...................................................................................... 16

*Kleindienst v. Mandel*,
408 U.S. 753 (1972)...................................................................................................... 8

*Mancini v. Northampton Cnty.*,
836 F.3d 308 (3d Cir. 2016)........................................................................................ 15

*Mathews v. Eldridge*,
424 U.S. 319 (1976).................................................................................................... 16

*Musser's Inc. v. United States*,
No. 10-4355, 2011 WL 4467784 (E.D. Pa. Sept. 26, 2011) ................................................. 18

*Palardy v. Twp. of Millburn*,
906 F.3d 76 (3d Cir. 2018)............................................................................................. 9

*Perry v. Sindermann*,
408 U.S. 593 (1972) ........ 9

*Pickering v. Bd. of Educ.*,
391 U.S. 563 (1968) ........ 5, 9

*Reilly v. City of Harrisburg*,
858 F.3d 173 (3d Cir. 2017) ........ 5

*Simms v. District of Columbia*,
872 F. Supp. 2d 90 (D.D.C. 2012) ........ 19

*Snyder v. Phelps*,
562 U.S. 443 (2011) ........ 11

*Stanley v. Georgia*,
394 U.S. 557 (1969) ........ 18

*Stevens v. Sch. City of Hobart*,
No. 2:13-CV-336-PRC, 2015 WL 4870789 (N.D. Ind. Aug. 6, 2015) ........ 7

*Temple Univ. v. White*,
941 F.2d 201 (3d Cir. 1991) ........ 20

*Terminiello v. City of Chicago*,
337 U.S. 1 (1949) ........ 12

*Texas v. Johnson*,
491 U.S. 397 (1989) ........ 10, 11

*Whiteland Woods, L.P. v. Twp. of W. Whiteland*,
193 F.3d 177 (3d Cir. 1999) ........ 6

*Williams v. Town of Greenburgh*,
535 F.3d 71 (2d Cir. 2008) ........ 12

*Young v. Souderton Area Sch. Dist.*,
No. 2024-23267 (Montgomery Ct. Com. Pl. Oct. 7, 2024) ........ 2

*Zinermon v. Burch*,
494 U.S. 113 (1990) ........ 15

**STATUTES, RULES, AND REGULATIONS**

65 Pa.C.S. §§ 701-716 .......... 6

**CONSTITUTIONAL PROVISIONS**

U.S. CONST. amend. XIV, §1 .......... 15

**OTHER AUTHORITIES**

Chris Ullery, *Souderton's Bill Formica Apologizes for 'Impulsive and Unprofessional' Kamala Harris Post*, BUCKS COUNTY COURIER TIMES (Aug. 23, 2023) .......... 2

Maddie Hanna, *Souderton school board member tells angry residents his lewd Kamala Harris comment 'is being twisted by my opposition,'* PHILADELPHIA INQUIRER (Aug. 29, 2024) .......... 2

## INTRODUCTION

The Souderton Area School District ("SASD" or "District") banned Plaintiffs Patrick Kitt, Christopher Spigel, and Helen Spigel ("Banned Plaintiffs")—active members of the SASD community—from District property, without any opportunity to be heard, to stifle their criticism of the District. The District issued this categorical property ban in direct response to Banned Plaintiffs' expression of disapproval of school board members' conduct and complicity in a board member's offensive social media posts. Banned Plaintiffs risk arrest for trespass if they enter District property for the remainder of the 2024-25 school year, meaning they cannot attend school board meetings to offer public comment or hear from members of the board and the community about local matters of public importance.

The District's actions violated and continue to violate Banned Plaintiffs' First Amendment rights to free speech and to be free from retaliation as a result of that speech, as well as their Fourteenth Amendment rights to due process. Banned Plaintiffs have suffered, and will continue to suffer, irreparable harm if the District's restrictions continue throughout these proceedings. The equities and public interest also favor restoring Banned Plaintiffs' freedom of expression for the remainder of these proceedings because the District's interest in suppressing constitutionally protected expression is virtually non-existent whereas the public interest will be served by upholding the Constitution and allowing Banned Plaintiffs to share their ideas and beliefs about local governance.

For these reasons, Plaintiffs respectfully ask this Court to preliminarily enjoin the District from continuing these unconstitutional restrictions and order the District to permit Plaintiffs Patrick Kitt, Christopher Spigel, and Helen Spigel to enter school property for public events,

including school board meetings, and for any other purposes on the same terms as other parents or siblings of children who attend SASD schools.

## FACTUAL BACKGROUND

The Souderton Area School District is facing community backlash related to lewd and offensive social media comments by William Formica, one of its school board members. Verified Complaint ¶¶ 21-24. In these posts, Mr. Formica made sexual comments about a public official, disparaged teachers and non-English speakers, and criticized diversity training programs. *Id.* When Mr. Formica's statements came to light in August 2024,[1] attendance at the District's public school board meetings skyrocketed. *Id.* Souderton Area residents organized to promote shared values in their education system and uphold the District's slogan that "Character Counts." *Id.*

In response, the District pursued various strategies to make its board meetings less accessible and suppress community-led efforts to express disappointment in District leadership. In September, the District decided—without warning or a formal announcement—to require photo identification to gain entry to its public meetings. *Id.* at ¶¶ 55-56. The District claimed that this informal policy was designed to give priority seating to residents, employees, and press. *Id.* at ¶ 57. But its implementation caused residents to be turned away from meetings on September 11, 2024, and September 26, 2024.[2] *Id.* at ¶¶ 58-59, 62-64.

---

[1] Chris Ullery, *Souderton's Bill Formica Apologizes for 'Impulsive and Unprofessional' Kamala Harris Post*, BUCKS COUNTY COURIER TIMES (Aug. 23, 2023); Maddie Hanna, *Souderton school board member tells angry residents his lewd Kamala Harris comment 'is being twisted by my opposition,'* PHILADELPHIA INQUIRER (Aug. 29, 2024), available at https://www.inquirer.com/education/bill-formica-posts-souderton-school-board-20240829.html.

[2] This photo identification requirement was the subject of a separate lawsuit alleging violations of Pennsylvania's Sunshine Act. *See Young v. Souderton Area Sch. Dist.*, No. 2024-23267 (Montgomery Ct. Com. Pl. Oct. 7, 2024). The District dropped the photo identification requirement

The District's restrictions on expression escalated in response to an interaction between a school board member and protesters after the September 26, 2024, meeting. *Id.* at ¶ 71. As Mr. Formica and fellow school board member Kim Wheeler left that meeting with Ms. Wheeler's teenage daughter, they were met by protesters making cricket noises and commenting that the school board's silence signified complicity in Mr. Formica's misconduct. *Id.* at ¶ 72. Plaintiffs Patrick Kitt and Christopher Spigel, parents of children who attend SASD schools, as well as Plaintiff Helen Spigel, Christopher Spigel's daughter and recent SASD graduate, were among those protesters. *Id.* at ¶¶ 57, 5-7. The protesters stood several parking spaces away from the school board members' cars to ensure they would not block them from exiting the grounds. *Id.* at ¶ 73. Mr. Spigel, assuming that the teenager was Mr. Formica's daughter, asked if she was aware of her father's controversial social media comments. *Id.* at ¶ 74. Ms. Wheeler then escorted the teenager to her car, confronted the protesters for making comments to her child, and pointed her fingers in Mr. Kitt and Mr. Spigel's faces. *Id.* at ¶ 75. Mr. Kitt told Ms. Wheeler that he was not speaking to her or her child. *Id.* at ¶ 76. Ms. Wheeler then got in her car and left the parking lot. *Id.* at ¶ 77. None of the Plaintiffs were arrested or charged with any crime in connection with the events of September 26. *Id.* at ¶ 83.

Two weeks later, SASD, through its solicitor, sent letters to Mr. Kitt, Mr. Spigel, and Ms. Spigel prohibiting them from entering any school property through the close of the 2024-2025 school year. *See* Exhibit A to Verified Complaint, Oct. 10, 2024 Letters ("Oct. 10 letters"). The letter misrepresented Banned Plaintiffs' conduct on September 26, 2024, and claimed that their behavior created a perceived threat of harm on school property. Citing "serious safety concerns

---

in response to that lawsuit and has not enforced this requirement at public board meetings since September 26, 2024.

for its staff," the letter imposed a categorical ban from school property with a narrow exception for school drop-offs and pick-ups in which the parents must remain in the car. *Id.* Plaintiffs' counsel sent a letter to the District, advising that implementing such a ban without any opportunity to contest the District's allegations violated Banned Plaintiffs' free-speech and due process rights. *See* Exhibit B to Verified Complaint, Oct. 21, 2024, Letter from Rose to Sultanik ("Oct. 21 letter"). The letter specifically noted that Banned Plaintiffs wished to attend many upcoming events occurring on school property, including a parent participation meeting on October 23, the next school board meeting on October 24, and the fall student play on November 7-9. *Id.* In response, the District allowed Banned Plaintiffs to attend the parent participation meeting and the fall student play, but specifically stated that they were not permitted to attend upcoming school board meetings.[3] *See* Exhibit C to Verified Complaint, Oct. 21-22, 2024, Emails between Rose and Sultanik ("Oct. 21-22 emails"). In addition to school board meetings on November 21, December 2, December 11, and December 19, there are other events that Banned Plaintiffs wish to attend in the next six weeks, including choir concerts on December 19-20, and a planning meeting for one of the Banned Plaintiffs' children.

**ARGUMENT**

The District's ban on Banned Plaintiffs' access to school property violates their rights under the First and Fourteenth Amendments because it completely restricts their free-speech right to comment at school board meetings and was imposed without any due process whatsoever. This Court should grant the requested preliminary injunctive relief and order the

---

[3] Plaintiffs' counsel also had to contact the District on October 22, 2024, to request that Mr. Spigel be permitted to enter school property on November 5, 2024, to exercise his right to vote, as his polling place is located at one of the District's elementary schools. *See* Oct. 21-22 emails.

District to lift the ban because Banned Plaintiffs have shown that they are likely to succeed on the merits of their First and Fourteenth Amendment claims, the District's restrictions have and will continue to cause irreparable injury to Banned Plaintiffs each day this litigation is pending, the District will suffer no harm if the preliminary injunctive relief issues, and the requested relief will further the public interest in facilitating free expression about matters of local governance. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (listing preliminary injunction factors).

## I. Banned Plaintiffs Are Likely to Succeed on the Merits of Their Claims.

Public participation in local governance, such as school board meetings, is at the core of the liberty interests protected by the U.S. Constitution. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 573 (1968) ("The public interest in having free and unhindered debate on matters of public importance—the core value of the Free Speech Clause of the First Amendment—is [] great"); *City of Madison, Joint Sch. Dist. No. 8 v. Wis. Emp. Rels. Comm'n*, 429 U.S. 167, 175 (1976) (explaining that when a "State has opened a forum for direct citizen involvement" by hosting a public school board meeting, "it is difficult to find justification for excluding . . . [those] who are most vitally concerned with the proceedings"). Although Banned Plaintiffs dispute the District's account of the facts regarding their conduct after the September 26, 2024, school board meeting, even under the District's version, banning Banned Plaintiffs from school property without any due process unreasonably deprives them of their constitutional rights. First, the ban deprives the Banned Plaintiffs of their First Amendment right to comment at school board meetings and was imposed in retaliation for Banned Plaintiffs' exercise of their constitutionally protected free-speech rights. And second, the District imposed the ban without providing Banned Plaintiffs with any pre- or post-deprivation due process in violation of their Fourteenth Amendment rights.

Because the District has categorically prohibited Banned Plaintiffs' freedom of expression on District property without providing any opportunity to contest that restriction, its conduct is unconstitutional.

### *A. Banned Plaintiffs Are Likely to Succeed on the Merits of Their Claim that the District's Categorical Ban Violates their First Amendment Right to Free Expression.*

#### 1. The Ban Deprives Banned Plaintiffs of their Free-Speech Right to Attend and Comment at School Board Meetings.

The constitutional protection for "the right to receive information and ideas" includes the right of the public and the press "to attend certain types of governmental proceedings." *Whiteland Woods, L.P. v. Twp. of W. Whiteland*, 193 F.3d 177, 180 (3d Cir. 1999) (internal citations and quotations omitted). The Pennsylvania Sunshine Act gives members of the public the right to attend school board meetings and provides residents and taxpayers of the school district the right to comment at school board meetings. 65 Pa.C.S. §§ 701-716; s*ee Whiteland Woods, L.P.*, 193 F.3d at 181 (noting that the Pennsylvania Sunshine Act guarantees public access to township planning commission meetings); *see also Galena v. Leone*, 638 F.3d 186, 198-99 (3d Cir. 2011) (county council meeting was limited public forum because "the meeting was held for the limited purpose of governing Erie County and discussing topics related to that governance."); *Barna v. Bd. of Sch. Dirs.*, 143 F. Supp. 3d 205, 213 (M.D. Pa. 2015), *aff'd in part, vacated in part on other grounds, remanded*, 877 F.3d 136 (3d Cir. 2017) (public school board meetings were limited public fora).

Although courts have upheld decisions to expel individuals who engage in disruptive behavior at a public meeting from that particular meeting, they have repeatedly held that blanket prohibitions on attendance at *future* meetings because of past misconduct is unconstitutional. *Barna*, 143 F. Supp. 3d at 216 (collecting cases and concluding that school district's ban

prohibiting plaintiff from attending public school board meetings and from entering school district property violated his free speech rights); *Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 548–50 (D. Vt. 2014) ("A categorical ban of a single individual from open school board meetings, however, is not narrowly tailored and does not leave open ample alternative channels of communication."); *Stevens v. Sch. City of Hobart*, No. 2:13-CV-336-PRC, 2015 WL 4870789 at *14 (N.D. Ind. Aug. 6, 2015) (holding outright ban from school property imposed on plaintiff to be insufficiently tailored); *Brown v. City of Jacksonville*, No. 3:06-CV-122-J-20MMH, 2006 WL 385085 at *4 (M.D. Fla. Feb. 17, 2006) (preliminarily enjoining city council's ban of plaintiff from city council meetings because it was not narrowly tailored to achieve government's interest in running efficient meetings). Accordingly, even if SASD's decision to bar Banned Plaintiffs from school board meetings and other public events on school property were related to the significant governmental interest of protecting the safety of school staff and the community, which it is not, its "categorical ban on speech is not tailored at all, as it entirely forecloses a means of communication." *Cyr*, 60 F. Supp. 3d at 548; *see id.* at 548-49 (noting that the school district could have tailored its restriction on plaintiff's attendance at school events by "draft[ing] a notice against trespass that was in effect only during school hours or post[ing] a police officer at public meetings").

The District has prohibited Banned Plaintiffs from attending every public school board meeting for the remainder of the 2024-25 school year. The ban deprives Banned Plaintiffs of their First Amendment rights to attend meetings to receive information and ideas and to offer public comment on issues that are or may reasonably come before the board. There is no equivalent alternative to physical presence at meetings of a school board because "physical

participation in open school board meetings is a form of local governance."[4] *Cyr*, 60 F. Supp. 3d at 549-50 (noting that telephonic participation at a school board meeting "would have substantially diminished [plaintiff's] ability to communicate not only with the school board, but with community members"); *Brown*, 2006 WL 385085, at *4 (concluding that e-mails or letters delivered to the city council are not ample alternatives to in-person deliverance). Accordingly, prohibiting individuals from being "present at these meetings to communicate directly with elected officials" infringes on their First Amendment right of free expression. *Cyr*, 60 F. Supp. 3d at 550; *cf. Flynn v. Big Spring Sch. Dist.*, No. 1:22-CV-00961, 2024 WL 4244832, at *9 (M.D. Pa. Sept. 19, 2024) (denying summary judgment as to First Amendment right to petition claim based on a school district's decision to ban plaintiffs from school board meetings). The District's ban on Banned Plaintiffs' attendance at *future* school board meetings unreasonably deprives them of the opportunity to speak and to receive information and ideas in violation of their First Amendment rights.

**2. The District Imposed the Property Ban in Retaliation for Banned Plaintiffs' Exercise of their Free-Speech Rights.**

Banned Plaintiffs are likely to prevail on their retaliation claim because: (1) the comments they made to Board Member Kim Wheeler in the outdoor parking lot following the school board meeting were constitutionally protected criticism of government officials; (2) the District's ban of Banned Plaintiffs from school property for the remainder of the school year would deter an individual of ordinary firmness from engaging in similar speech; and (3) the

---

[4] The District does not presently offer opportunities to attend its school board meetings virtually, but even providing such opportunities would not make its categorical property bans reasonable. *See Kleindienst v. Mandel*, 408 U.S. 753, 765 (1972) (noting that there are "particular qualities inherent in sustained, face-to-face debate, discussion and questioning").

District imposed the property ban because of Banned Plaintiffs' comments to Ms. Wheeler. *See Palardy v. Twp. of Millburn*, 906 F.3d 76, 80–81 (3d Cir. 2018) (describing retaliation test). The ban not only punishes Banned Plaintiffs, but it has a chilling effect on other individuals' willingness to criticize members of the school board. *See Pickering*, 391 U.S. at 574 (noting that retaliatory acts are "a potent means of inhibiting speech"). There can be no question that banning individuals from entering school property would have the effect of deterring others, especially parents of students in the District, from engaging in such criticism. Accordingly, any restrictions the District has imposed on Banned Plaintiffs' access to property, including requiring them to provide advance notice and stay in their vehicles when they pick their children up from school, violate their First Amendment rights if done in retaliation for protected expression. *See, e.g.*, *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) ("If the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited"); *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997) ("[O]therwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech.").

*a. Banned Plaintiffs engaged in constitutionally protected expression*

Banned Plaintiffs' statements to Ms. Wheeler criticizing Mr. Formica's social media comments following the school board's September 26, 2024, meeting were protected speech under the First Amendment to the U.S. Constitution. *See Frazier v. City of Philadelphia*, 441 F. Supp. 3d 76, 87 (E.D. Pa. 2020) ("[S]peech is protected if it attempts to bring to light actual or potential wrongdoings on behalf of a public official or demonstrates a breach of public trust on behalf of the official.") (citing *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001)); *see*

*also, e.g.*, *Eichenlaub v. Twp. Of Indiana*, 385 F.3d 274, 282-83 (3d Cir. 2004) ("[E]xcept for certain narrow categories deemed unworthy of full First Amendment protection — such as obscenity, "fighting words" and libel — all speech is protected by the First Amendment."). This is so even if, as the District falsely alleged, Mr. Kitt and Mr. Spigel "stood close to Kim Wheeler's car" and screamed at Ms. Wheeler and her teenage daughter, "'Tell your father he's an asshole' and 'Tell her dad he's a fascist and needs to resign.'" Oct. 10 Letters.[5]

"If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). "[I]n public debate [we] must tolerate insulting, and even outrageous, speech in order to provide adequate 'breathing space' to the freedoms protected by the First Amendment." *Boos v. Barry,* 485 U.S. 312, 322 (1988) (some internal quotation marks omitted). Although Ms. Wheeler and her teenage daughter might have preferred not to hear what Banned Plaintiffs had to say, that does not deprive Banned Plaintiffs' expression of constitutional protection. *See Erznoznik v. Jacksonville,* 422 U.S. 205, 210–211 (1975) (internal quotation marks omitted) ("[T]he Constitution does not permit government to decide which types of otherwise protected speech are sufficiently offensive to require protection for the unwilling listener or viewer. Rather, . . . the burden normally falls upon the viewer to avoid further bombardment of [his] sensibilities simply by averting [his] eyes."). Here, Banned Plaintiffs directed their comments at Ms. Wheeler and her daughter in an outdoor parking lot on school property as the Wheelers were exiting a public school board meeting.

---

[5] The District has provided no notice as to what it alleges Ms. Spigel said, stating only that she "engaged in a loud and disruptive screaming match next to Kim Wheeler's car and screamed at not only Kim Wheeler, a Souderton Area School District Board Member, but her daughter." Oct. 10 Letters.

Verified Complaint ¶¶ 72-77. Ms. Wheeler and her daughter were not a "captive audience" such that they had an expectation that they would not be exposed to unwelcome speech. *See Snyder v. Phelps*, 562 U.S. 443, 459–60 (2011) ("[W]e have applied the captive audience doctrine only sparingly to protect unwilling listeners from protected speech. For example, we have upheld a statute allowing a homeowner to restrict the delivery of offensive mail to his home and an ordinance prohibiting picketing before or about any individual's residence.") (internal citations and quotations omitted); *Cohen v. California,* 403 U.S. 15, 21 (1971) ("The ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is ... dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner.").

Nor do Banned Plaintiffs' comments "fall within that small class of 'fighting words' that are 'likely to provoke the average person to retaliation, and thereby cause a breach of the peace.'" *Johnson*, 491 U.S. at 409 (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 574 (1942)). The Third Circuit has held that "[t]he unprotected category of speech called 'fighting words' is an extremely narrow one. The First Amendment on the whole offers broad protection for speech, be it unpleasant, disputatious, or downright offensive. … To be punishable, words must do more than bother the listener; they must be nothing less than 'an invitation to exchange fisticuffs.'" *Johnson v. Campbell*, 332 F.3d 199, 212 (3d Cir. 2003) (quoting *Johnson*, 491 U.S. at 409); *see Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949) ("freedom of speech, though not absolute, is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest") (internal citations omitted). As the U.S. Court of Appeals for the Second Circuit has explained, while comparing a government official "to a fascist dictator

easily qualifies as 'personal abuse' in a colloquial sense, as a matter of law it does not rise to the level of so-called 'fighting words,' those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction." *Williams v. Town of Greenburgh*, 535 F.3d 71, 77 (2d Cir. 2008) (internal quotations and citations omitted). Notably, here, no Banned Plaintiff was arrested or charged with any crime in relation to this incident. Neither Ms. Wheeler nor her teenage daughter sought a restraining order against the Banned Plaintiffs. Instead, SASD barred Banned Plaintiffs' attendance at school board meetings and other public events on school property to punish and silence them for speech critical of its board members.

*b. The property ban constitutes an actionable adverse impact*

Banning an individual from school property—upon risk of arrest for trespassing—would deter a person of ordinary firmness from engaging in such protected activity. *See Flynn v. Big Spring Sch. Dist.*, No. 1:22-CV-00961, 2024 WL 4244832, at *8 (M.D. Pa. Sept. 19, 2024) (denying summary judgment on retaliation claim to school district that barred individuals from school board meetings because a reasonable jury could find that the ban constituted "an actionable adverse impact"). This is particularly true for parents of students in the District like Mr. Kitt and Mr. Spigel. In addition to being completely barred from public school board meetings, they must notify the school any time they wish to drive onto school property to drop off or pick up their children and are prohibited from leaving their vehicles. They must also seek special permission to attend their children's events at the school. Although the solicitor gave them permission, via Plaintiffs' counsel, to go onto school property to attend a parent-teacher conference and the fall play, and to vote in the 2024 general election, he gave no indication that Plaintiffs would be permitted to go onto school property for similar events in the future. Indeed,

he stated that "They can only attend the parent participation meeting and the fall play. The cease-and-desist letters still bar their attendance at public meetings given their aberrant behaviors." Oct. 21-22 emails. Requiring Plaintiffs to seek District permission every time they wish to attend a public event on school property or meet with their child's teacher is not only inconvenient, but humiliating.

*c. The District imposed the property ban because of Banned Plaintiffs' statements*

The District's own actions establish that Banned Plaintiffs' protected speech caused the District to ban them from school property. *See Jerri v. Harran*, No. 13-1328, 2016 WL 3453203, *2 (E.D. Pa. June 23, 2016) (citing *Lauren W. ex rel Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)) (explaining that causation element of retaliation claim can be established in three ways: "(1) a suspicious temporal proximity between the protected activity and the adverse action"; "(2) a pattern of antagonism between the plaintiff and the defendant"; or (3) "a plaintiff may show that an inference of causation is merited based on 'evidence gleaned from the record as a whole'"). Here, the District's cease-and-desist letters to the Banned Plaintiffs and subsequent actions demonstrate that it banned them from school property because of their protected expression. According to the letters, the District imposed the property ban "as the result of [Banned Plaintiffs'] inappropriate actions," which it alleged were the statements made by Mr. Kitt and Mr. Spigel to Ms. Wheeler and her teenage daughter, what it characterizes as "a loud and disruptive screaming match," and the use of a "clicking toy." Oct. 10 Letters. As described in the District's letters to Mr. Kitt and Mr. Spigel, the statements made by Banned Plaintiffs pertained to Mr. Formica and Banned Plaintiffs' belief that he should resign his position from the school board. *Id.*

Although the District contends that Banned Plaintiffs "created a perceived threat of harm at the School Property" and that "the District has serious safety concerns for its staff and the community as the result of your inappropriate actions," Oct. 10 letters, the District's subsequent decisions to allow Banned Plaintiffs to enter school property at times when students, staff, and community members are present belie those concerns. For instance, the District allowed Mr. Spigel to enter school property during the school day when students and staff are present to attend a parent participation conference and allowed both Mr. Kitt and Mr. Spigel to attend the fall student play. *See* Oct. 21-22 emails. But when Plaintiffs' counsel asked the solicitor whether Mr. Kitt and Mr. Spigel would be permitted to attend public meetings of the school board, the solicitor responded that "[t]he cease-and-desist letters still bar their attendance at public meetings." *Id*. Allowing the Banned Plaintiffs to attend events on school property—where students and teachers are present—while barring them from school board meetings—where the audience is composed primarily of adults and armed officers are present—demonstrates that SASD's purported concerns about staff and community safety are not only unfounded but pretextual. The only conclusion to be drawn is that the District's motive for the ban is to punish the Banned Plaintiffs for their prior expression and to prevent them from speaking at future school board meetings. Accordingly, Banned Plaintiffs are likely to succeed on the merits of their claim that the District's ban violated their First Amendment right to be free from government retaliation for engaging in protected speech.

### *B. Banned Plaintiffs Are Likely to Succeed on the Merits of Their Claim that the District Violated Their Due Process Rights by Failing to Provide a Meaningful Opportunity to Be Heard Before or After Imposing the Ban.*

The Fourteenth Amendment to the U.S. Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, §1. Where a state threatens any interest recognized by state or federal law, "procedural due process requires notice and an opportunity to be heard," *Mancini v. Northampton Cnty.*, 836 F.3d 308, 315 (3d Cir. 2016), to protect against "the mistaken or unjustified deprivation" of that interest. *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990) (quoting *Carey v. Piphus*, 435 U.S. 247, 259 (1978)). Courts must consider three factors in determining what process is required to justify the deprivation of a protected interest: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used"; (3) "the probable value, if any, of additional or substitute procedural safeguards" and the government's corresponding interest, including the "fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see also Cyr*, 60 F. Supp.3d at 551 (applying the *Mathews* test to a school district's decision to ban plaintiff from its property via no trespass letter).

Here, under the first factor, the District's unilateral ban on Banned Plaintiffs' presence on school property deprives them of both their First Amendment interest in attending and commenting at public school board meetings, *see supra* Section I(A)(1), and their "liberty interest 'to remain in a public place of [their] choice'" without any due process, *Kennedy v. City Of Cincinnati*, 595 F.3d 327, 336 (6th Cir. 2010) (holding that a city police officer violated an individual's liberty interest in remaining in public places of his choice by banning him from all

city recreational property without due process of law) (quoting *City of Chicago v. Morales*, 527 U.S. 41, 54 (1999)).

Second, there is a high risk of erroneous deprivation because the District's ban was not "issued pursuant to any protocol," did not "set out a process to contest the ban," and did not provide Banned Plaintiffs with "a meaningful opportunity to contest" the ban. *Cyr*, 60 F. Supp. 3d at 551. Allowing District officials such broad discretion to ban members of the public from public events on District property, without any means to challenge the exercise of that discretion, is contrary to the ideal of fundamental fairness protected by the Fourteenth Amendment. *See Catron v. City of St. Petersburg*, 658 F.3d 1260, 1267-68 (11th Cir. 2011) (noting that the second *Mathews* element "weighs heavily in Plaintiffs' favor" because government officials had no guidance in exercising their discretion and individuals warned not to enter public property had no means to challenge their trespass warnings).

Third, the governmental interest in protecting the safety of District staff and community members "is not so overwhelming, taxing, or immediate that the [District] did not have time to set out reasons for their decision and provide . . . an opportunity to be heard." *Cyr*, 60 F. Supp. 3d at 552. Indeed, the District refused to provide any opportunity for Banned Plaintiffs to be heard even after Plaintiffs' counsel raised these due process issues with the solicitor. Oct. 21 Letter. Because all three *Mathews* factors demonstrate that Banned Plaintiffs were deprived of their liberty interests without *any* process whatsoever, Banned Plaintiffs are likely to succeed on the merits of their claim that the District violated their rights under the Fourteenth Amendment.

## II. Banned Plaintiffs Will Suffer Irreparable Harm Without Preliminary Injunctive Relief.

Banned Plaintiffs will be irreparably harmed if they are not permitted to go onto school property to express their viewpoints about issues involving the District at school board meetings

or to attend events that are otherwise open to the public or students' parents and siblings. As the Supreme Court has noted, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976); *accord Abu-Jamal v. Price*, 154 F.3d 128, 135-36 (3d Cir. 1998). This principle extends to other constitutional rights, including the Fourteenth Amendment right to due process. *See Council of Alt. Pol. Parties v. Hooks*, 121 F.3d 876, 883 (3d Cir. 1997) (where plaintiffs are likely to prevail on the merits regarding the violation of constitutional rights—in this case voting and association—"it clearly follows that denying them preliminary injunctive relief will cause them to be irreparably injured"); *Beattie v. Line Mountain Sch. Dist.*, 992 F. Supp. 2d 384, 396 (M.D. Pa. 2014) ("Deprivation of a constitutional right alone constitutes irreparable harm as a matter of law, and no further showing of irreparable harm is necessary"); *Musser's Inc. v. United States*, No. 10-4355, 2011 WL 4467784, at *8 (E.D. Pa. Sept. 26, 2011) ("Deprivation of a constitutional right has been recognized [by the Third Circuit] as irreparable harm.").

In this case, absent preliminary injunctive relief, Banned Plaintiffs will be unable to attend public school board meetings and other District functions at which community members share their opinions and listen to the ideas of their neighbors. *See Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("[T]his right to receive information and ideas, regardless of their social worth, is fundamental to our free society."). Banned Plaintiffs are therefore faced with the choice of foregoing their important political speech, or exercising their rights under threat of arrest. *See* Oct. 10 Letters (citing 18 Pa. C.S. § 3503(b) to indicate that noncompliance may trigger enforcement of criminal trespass laws).

## III. The District Will Suffer No Irreparable Harm If This Preliminary Injunctive Relief Issues.

The potential harm to the District is significantly less than the harm from the District's abridgement of Banned Plaintiffs' constitutional rights. Preliminary injunctive relief will not harm the District because it would merely require the District to reasonably tailor its restrictions on free expression on District property. The District can adequately protect its interests in protecting the safety of its staff and community members through viewpoint-neutral, non-categorical measures, rather than policies that bar Banned Plaintiffs from being present on school property due to their criticism of the District. For example, if the District is truly concerned about the safety of its staff and the community, the District could employ security officers at upcoming school board meetings. *See Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 548–49 (D. Vt. 2014) ("If the ARSU's goal in issuing a notice against trespass to Mr. Cyr was to protect school staff, then it could have drafted a notice against trespass that was in effect only during school hours or posted a police officer at public meetings held on ARSU grounds. Also, the ARSU could have moved school board meetings to a neutral and secure location."). The government "suffers no legitimate harm from not enforcing an unconstitutional policy." *Amalgamated Transit Union Loc. 85 v. Port Auth.*, 39 F.4th 95, 109 (3d Cir. 2022). Accommodating free expression—even unpleasant, disputatious, or downright offensive expression—does not constitute irreparable harm. Accordingly, the balance of hardships favors granting preliminary injunctive relief.

## IV. Granting Preliminary Injunctive Relief Will Serve the Public Interest.

The public's interest is served by respecting the Banned Plaintiffs' rights to have their voices heard, listen to fellow community members, and spread their message to those officials with authority over the policies and actions that may impact their local public education

system. *See Council of Alt. Pol. Parties v. Hooks*, 121 F.3d 876, 883-84 (3d Cir. 1997) ("In the absence of legitimate, countervailing concerns, the public interest clearly favors the protection of constitutional rights . . . ."). Protecting constitutional rights is always in the public interest. *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 105 (D.D.C. 2012); *Buck v. Stankovic*, 485 F. Supp. 2d 576, 586-87 (M.D. Pa. 2007). Moreover, "the public interest does not suffer by enforcing the First Amendment's protection against restrictions on speech." *Ctr. for Investigative Reporting v. Se. Pa. Transp. Auth.*, 975 F.3d 300, 317 (3d Cir. 2020). "There is a strong public interest in upholding the requirements of the First Amendment. And, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Amalgamated Transit Union*, 39 F.4th at 109 (quotation marks and citations omitted).

Here, preliminary relief will restore Banned Plaintiffs' rights to free expression, which were violated without adequate procedural protections. The District's decision to categorically exclude individuals critical of its conduct from expressive forums in which they would otherwise be entitled to participate, without offering an opportunity to be heard, cannot stand. *See Cyr*, 60 F. Supp. 3d at 549 (noting that a categorical ban on expressive speech singling out an individual does not even satisfy the low threshold of reasonableness review). Accordingly, the public interest favors granting a temporary restraining order or preliminary injunction.

## **CONCLUSION**

For the foregoing reasons, Banned Plaintiffs respectfully request that this Court grant the requested preliminary injunctive relief.[6]

---

[6] Because this is a non-commercial case involving purely injunctive relief, and the balance of hardships favors Banned Plaintiffs, the Fed. R. Civ. P. 65(c) security bond requirement should be

Dated: November 20, 2024

Respectfully Submitted,

By: */s/ Sara J. Rose*

Sara J. Rose
PA Bar No. 204936
ACLU OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
Tel: (412) 681-7864
srose@aclupa.org

Solomon F. Worlds
PA Bar No. 333677
Kirsten M. Hanlon
PA Bar No. 336365
ACLU OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
sfworlds@aclupa.org
khanlon@aclupa.org

Joy Ramsingh
PA Bar No. 326874
Emily Morgan
PA Bar No. 335485
RAMSINGH LEGAL, PLLC
336 Cumberland Street, Suite W
Lebanon, PA 17042
joy@ramsinghlegal.com
emily@ramsinghlegal.com

waived. *See Elliott v. Kiesewetter*, 98 F.3d 47, 59-60 (3d Cir. 1996); *Temple Univ. v. White*, 941 F.2d 201, 219-20 (3d Cir. 1991).