**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SOUDERTON AREA FOR ALL, *et al.*,** | : | **CIVIL ACTION** |
| Plaintiffs, | : | |
| **v.** | : | |
| | : | **NO. 24-6202** |
| **SOUDERTON AREA SCHOOL DISTRICT,** | : | |
| Defendant. | : | |

**Perez, J.** **September 28, 2026**

**MEMORANDUM**

This case began as a case about Plaintiffs' exercise of their First Amendment rights by protesting at a Souderton Area School District ("District") school board meeting. It then became a case about keeping promises. Now, it is a case about which promises this Court can enforce. When Plaintiffs protested the Souderton Area School Board outside a September 2024 meeting, the government officials for whom their message was intended were not the only ones affected. One school board member was accompanied by her teenage daughter as they exited the meeting. In the parking lot, Plaintiffs Christopher Spigel, Helen Spigel, and Patrick Kitt confronted them. Rather than constraining their critical expression to the adult members of the school board, the protesters directed their ire toward the child, who the District has consistently maintained was frightened by the adult Plaintiffs' conduct.

After the District retaliated against Plaintiffs and Plaintiffs brought this lawsuit, the parties engaged in lengthy settlement negotiations. At all times, the settlement terms included a promise by Plaintiffs to issue an apology to the child who was personally, adversely affected by their conduct.

The settlement negotiations ultimately broke down, and this Court granted the District's motion to enforce the settlement agreement on promissory estoppel grounds. The Court found that Plaintiffs promised to dismiss the lawsuit and apologize to the child, that the District relied on those promises when it took definite and substantial action to fulfill its own obligations under the settlement agreement, and that it would be unjust to allow Plaintiffs to walk away after the District's actions in reliance. Plaintiffs move for reconsideration of one part of the Court's order, which was sealed due to the confidential nature of the parties' agreement. The Sealed Supplemental Order required Plaintiffs to keep their promise to apologize to the board member's teenage daughter, an innocent bystander who no one disputed was caught in the crossfire of the protest and experienced emotional distress as a result.

As adults, as community members, and as parents, people recognize the importance of teaching children by example: showing them kindness and respect, and taking accountability for their choices so that their children may follow those examples in their treatment of others. It is not controversial to acknowledge that the ethical thing to do when an adult harms a child is to apologize to that child, even if the harm was inadvertent. *See* ECF No. 80-3 ¶ 11. The First Amendment, however, limits the Court's ability to compel an apology. A party may waive First Amendment rights through an agreement, but courts presume against waiver of fundamental rights. Any waiver must be voluntary, knowing, and intelligent, and supported by clear and compelling evidence. Here, the record does not establish such a waiver. The proposed apology changed throughout the negotiations—including who would issue it, what it would say, and how it would be delivered—and Kitt's willingness to apologize was conditioned on resolution of all other settlement issues, a condition that was not met. For these reasons, and those discussed more fully below, Plaintiffs' Motion for Reconsideration is granted.

## I. Background

The Court set forth an extensive background of this case in its Memorandum issued on February 2, 2026, and does not repeat its factual findings, with which the parties are familiar. *See* ECF No. 75. Plaintiffs Souderton Area for All, Patrick Kitt, Christopher Spigel, Helen Spigel, Maureen Kratz, and Heather Young move for reconsideration of the Court's Sealed Supplemental Order wherein the Court ordered Plaintiffs to "issue a private apology to Board Member Wheeler's daughter for causing her to experience emotional distress, in a manner agreed upon by the parties." ECF No. 80 ¶¶ 4–5 (quoting ECF No. 77). Plaintiffs argue that "[a] court-ordered apology constitutes state action that implicates the First amendment right against compelled speech." *Id.* ¶ 6. Plaintiffs did not raise this argument in their initial brief in opposition to the District's motion or at the hearing; however, Plaintiffs' brief included a footnote stating: "To the extent that the Court is inclined to grant relief on the basis of promissory estoppel, the Plaintiffs request time to conduct discovery on the efforts expended by the District and the costs incurred." ECF No. 53 at 19 n.4.

The District argues that reconsideration is not appropriate here because Plaintiffs have not shown that the Sealed Supplemental Order awards relief that is a clear error of law, Plaintiffs waived any First Amendment argument, and Plaintiff Kitt waived his First Amendment right against compelled speech by promising to issue the apology as part of the settlement agreement. ECF No. 81.

This motion turns on two overlapping issues: (1) whether the Sealed Supplemental Order was a clear error of law that would create manifest injustice; and (2) whether Kitt's agreement to apologize was a knowing, voluntary, intelligent waiver of his First Amendment rights.

## II. Legal Standard

A party may bring a motion for reconsideration "to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.

1985). The party seeking reconsideration must show: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (2) the need to correct a clear error of law or fact to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 678 (3d Cir. 1999). Generally, courts should deny motions for reconsideration where they rehash arguments already presented to the Court or where the party merely disagrees with the Court's initial decision. *Ameriprise Fin. Servs., Inc. v. Koenig*, No. 11-6140, 2012 WL 693042, at *1 (D.N.J. Mar. 1, 2012) (considering arguments raised in motion for reconsideration relating to injunctive relief ordered that party contended violated Fifth Amendment right against self-incrimination). "If the moving party asserts that the prior determination would work a manifest injustice, the party must persuade the court that 'it was clearly wrong and that adherence to that decision would create manifest injustice.'" *In re Dixon-Ross*, No. 2:15-cv-581, 2016 WL 1056776, at *3 (E.D. Pa. Mar. 17, 2016) (quoting *Afr. v. City of Phila. (In re Phila. Litig.)*, 158 F.3d 711, 720 (3d Cir. 1998)).

**III. Plaintiffs' New Evidence**

As an initial matter, Plaintiffs submitted a declaration from Plaintiff Patrick Kitt, summarizing the timeline of events and indicating that issuing an apology would be contrary to his beliefs. *See* ECF No. 80-3 ¶ 38. The District argues the Court should not consider Kitt's Declaration because it is not "newly discovered evidence" and is, therefore, improperly presented on a motion for reconsideration. Generally, courts should not consider evidence that was available earlier but not presented. *See Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 ("Where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration."). The Declaration was not presented with Plaintiffs' opposition to the motion to enforce, but it merely restates the timeline of events and Kitt's position. That position is consistent with Plaintiffs' evidence that was initially presented. The Court does not rely on the declaration as

establishing any new facts. Nor does the Court need to accept Kitt's belief that the promise was tentative to resolve this motion. The Court cites to the declaration only as a succinct retelling of events, all of which is supported by evidence already in the record.

**IV. Compelled Speech**

Plaintiffs argue the Sealed Supplemental Order violates their First Amendment right against compelled speech. Defendants oppose, asserting that the Order at issue here merely enforces a promise Plaintiff Kitt made, through which he waived his First Amendment right. "[T]he First Amendment guarantees 'freedom of speech,' a term necessarily comprising the decision of both what to say and what *not* to say." *Miller v. Mitchell*, 598 F.3d 139, 152 (3d Cir. 2010). "[C]ourt enforcement of certain private agreements constitutes state action." *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 204 (3d Cir. 2012) (citing *Shelley v. Kraemer*, 334 U.S. 1, 19–20 (1948)). Legal obligations created by promissory estoppel would be enforced through the official power of the courts, so government action is implicated. *Cohen v. Cowles Media Co.*, 501 U.S. 663, 668 (1991).[1]

Even so, generally applicable laws do not offend the First Amendment simply because they have incidental effects on speech. *See id.* at 669 (finding that allowing promissory estoppel action based on promise not to disclose confidential source's identity did not violate First Amendment despite incidental consequence of inhibiting truthful reporting because "the First Amendment does

[1] Defendant cites *Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982), for the proposition that "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives . . . ." ECF No. 81 at 5. Defendant argues that holding Kitt to his promise does not transform his waiver into government compelled speech. *Id. Blum* is inapposite. It involved a nursing home's decisions to discharge or transfer patients and the state's resultant change to their Medicaid benefits. *Id.* at 1005. The Court found that the challenged decisions were made by physicians and nursing home administrators who were private parties, not by the State who merely reacted to those changes. *Id.* On those facts, the challenged actions were entirely private, so the plaintiffs could not establish a Fourteenth Amendment violation. *Id.* Here, although Defendant frames the promise as being entirely Plaintiff's, the Court's action to enforce that promise is certainly governmental action. *Cowles Media*, 501 U.S. at 668.

not confer on the press a constitutional right to disregard promises that would otherwise be enforced under state law"). "First Amendment rights can be limited via contract." *Williams v. Rigg*, 458 F. Supp. 3d 468, 481 (S.D.W. Va. 2020) (discussing *Cowles Media*, 501 U.S. 663). However, there must be "'clear' and 'compelling' evidence of waiver and that waiver is voluntary, knowing, and intelligent." *Democratic Nat'l Comm.*, 673 F.3d at 205. "[C]ourts must indulge every reasonable presumption against waiver of fundamental constitutional rights." *Id.* (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). In the context of the First Amendment, a waiver must also be "freely given." *Janus v. Am. Fed. State, Cnty. & Mun. Emps., Council 31*, 585 U.S. 878, 930 (2018).

Typically, courts lack the power to order litigants to apologize. *See Devonish v. Atl. Cnty. Justice Facility*, No. 10-1866, 2010 WL 3024858, at *3 (D.N.J. July 29, 2010) (collecting cases and dismissing claim for injunctive relief directing an apology because "the remedy of 'apology' is not cognizable, either within the meaning of a Section 1983 action or as a general legal remedy that a court has the power to order, under any provision"); *see also Woodruff v. Ohman*, 29 F. App'x 337, 346 (6th Cir. 2002) (finding district court exceeded its equitable power when ordering defendant to apologize for gender discrimination because "[t]he apology will not provide any remedy . . . for which the damages imposed have not already accounted," and there was no authority "that would permit a court to order a defendant to speak in a manner that may well contravene the beliefs the defendant holds"); *Ali v. Barton*, No. 19cv1689, 2020 WL 7871948, at *7 (N.D. Fla. Aug. 25, 2020) (noting that the Court lacks the power to order defendants to issue "an unconditional apology").

It is clear that if the Sealed Supplemental Order was violated, it would be subject to court enforcement. That is state action. *Cowles Media Co.*, 501 U.S. at 668. Absent waiver of his First Amendment rights, the Court cannot compel Kitt to apologize to the child who was harmed by his

and other Plaintiffs' conduct. The Court can only enforce such an Order if there was clear and convincing evidence that Kitt's promise to apologize constituted a freely given, knowing, voluntary, and intelligent waiver of his First Amendment right. The evidence here falls short of that standard.

Throughout the settlement negotiations, the parties themselves disagreed about the nature of the apology. The apology was first raised as a term of the settlement at the settlement conference on January 16, 2025. ECF No. 54 at 2. The parties initially agreed that Plaintiff Stephanie Barnett Jamison would deliver the apology to the minor. *Id.* at 4; ECF No. 39-1 at 11. The minor thereafter expressed that she would not accept an apology from Jamison because Jamison was not directly involved in the actions that frightened her. ECF No. 39-1 at 11. As of February 5, 2025, the parties were still negotiating the specifics of the apology. *Id.* Plaintiffs eventually agreed that Kitt was willing to provide the apology "so long as all other issues in the case are resolved." *Id.* at 14. The issues were not fully resolved. Between February and May 2025, the parties continued exchanging drafts of the settlement agreement and making changes to certain provisions, including whether the parties would issue a joint press release, individual press releases, or no press release at all. *See* ECF No. 75 at 7. That term was never resolved because the District did not accept Plaintiff's final proposal that the agreement be silent as to a press release until the offer was terminated. *See id.* at 25. The Court already found that term material to the agreement. *See id.* at 23. As this Court previously explained, each of the drafts the parties exchanged contained materially different terms. ECF No. 75 at 24–25. Each constituted an offer or counteroffer, such that there was no settlement agreement that the Court could enforce under traditional contract principles. ECF No. 75 at 24–25. The Court agrees with Plaintiffs that Kitt could not knowingly, voluntarily, and intelligently

waive his First Amendment right to be free from government compelled speech when his promise was conditioned on the parties' resolution of all other issues—a condition that was not met.

Enforcing the Sealed Supplemental Order would amount to government compelled speech. The evidence of waiver is not clear and convincing. Accordingly, enforcement of the Sealed Supplemental Order would violate Plaintiffs' First Amendment rights and work a manifest injustice.

## V. Conclusion

The Court cannot compel Plaintiffs to apologize to the child they frightened and distressed because the settlement negotiations did not reach the point that the promise to apologize constituted a waiver of their First Amendment rights. Reconsideration is, therefore, granted. Paragraphs 7(b) and (c) of the Court's Order granting Defendant's Motion to Enforce the Settlement Agreement, ECF No. 76, are stricken. The Sealed Supplemental Order, ECF No. 77, is vacated. An appropriate Order follows.